IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| CAMELIA ANN WEST | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 6:22cv114 |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff initiated this lawsuit by filing a complaint seeking judicial review of the Commissioner's decision denying her application for Social Security benefits.  The matter was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636.  For the reasons below, the Commissioner's final decision is **AFFIRMED**.

## PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits on September 9, 2019, alleging a disability onset date of April 15, 2016.  The application was denied initially and on reconsideration.  Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ").  The ALJ conducted a telephone hearing on August 4, 2021, and issued an unfavorable decision on September 20, 2021.  Plaintiff submitted a request for review of the ALJ's decision. The Appeals Council denied the request for review on February 9, 2022.  Plaintiff then filed this lawsuit on March 30, 2022, seeking judicial review of the Commissioner's decision.

## STANDARD

Title II of the Act provides for federal disability insurance benefits.  Judicial review of the denial of disability benefits under section 205(g) of the Act, 42 U.S.C. § 405(g), is limited to

"determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (*per curiam*).  A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence.  *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision."  *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985).  Rather, conflicts in the evidence are for the Commissioner to decide.  *Spellman*, 1 F.3d at 360 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)); *Anthony*, 954 F.2d at 295 (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)).  A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner.  *Newton v. Apfel*, 209 F.3d 448, 455–56 (5th Cir. 2000); Social Security Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance—that is, enough that a reasonable mind would judge it sufficient to support the decision."  *Pena v. Astrue*, 271 Fed. Appx. 382, 383 (5th Cir. 2003) (citing *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history.  *Fraga v. Bowen*, 810 F.2d 1296, 1302 n. 4 (5th Cir.

2

1987).  If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed.  *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).  However, the Court must do more than "rubber stamp" the Administrative Law Judge's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings."  *Cook*, 750 F.2d at 393 (5th Cir. 1985).  The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability.  *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).  The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1)(A) and 423(d)(1)(A).  A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

In order to determine whether a claimant is disabled, the Commissioner must utilize a five–step sequential process.  *Villa*, 895 F.2d 1022.  A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry.  *Id.*; see *Bowling*, 36 F.3d at 435 (citing *Harrell*, 862 F.2d at 475).  Under the five–step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity.  At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe.  At Step Three, the commissioner must determine whether the claimant has an impairment or

combination of impairments that meet or equal one of the listings in Appendix I.  Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given her impairments, both severe and non–severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing her past relevant work.  Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy.  20 C.F.R. §§ 404.1520(b)–(f).  An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled."  *See Villa*, 895 F.2d at 1022.  An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates a presumption of disability. *Id*.  To obtain Title II disability benefits, a plaintiff must show that she was disabled on or before the last day of her insured status.  *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981), *cert denied*, 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982).  The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that she cannot perform her past relevant work.  *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989) (*per curiam*).

The procedure for evaluating a mental impairment is set forth in 20 CFR §§ 404.1520a and 416.920a (the "special technique" for assessing mental impairments, supplementing the five-step sequential analysis).  First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work.  20 CFR §§ 404.1520a(b)(1), 416.920a(b)(1).  Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation.  20 CFR §§ 404.1520a(c)(2–4), 416.920a(c)(2–4).  Third, after rating the degree

of loss, the ALJ must determine whether the claimant has a severe mental impairment.  20 CFR §§ 404.1520a(d), 416.920a(d).  If the ALJ's assessment is "none" or "mild" in the first three areas of function, and is "none" in the fourth area of function, the claimant's mental impairment is "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities."  20 CFR §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing.  20 CFR §§ 404.1520a(d)(2), 416.920a(d)(2).  Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the claimant's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§§ 404.1520a(c)(3), 416.920a(c)(3)]."  20 CFR §§ 404.1520a(d)(3) and (e)(2), 416.920a(d)(3) and (e)(2).

## ALJ'S FINDINGS

The ALJ made the following findings in her September 20, 2021 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2. The claimant has not engaged in substantial gainful activity since April 15, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: lumbar spine degenerative disc disease and anxiety (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), except she can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently.  She is limited to occasional use of foot controls with the left lower extremity.  She can stand and/or walk 2 hours in an 8-hour workday and sit 6 hours in

an 8-hour workday.  She can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds.  She can occasionally balance, stoop, kneel, crouch, and crawl.  She must avoid hazards such as unprotected heights and fast moving mechanical parts.  She can understand, remember, and carryout detailed but not complex instructions.

6.   The claimant is unable to perform past relevant work (20 CFR 404.1565).

7.   The claimant was born on November 11, 1972 and was 43 years old, which is defined as a younger individual age 18–44, on the alleged disability onset date.  The claimant subsequently changed age category to a younger individual age 45–49 (20 CFR 404.1563).

8.   The claimant has at least a high school education (20 CFR 404.1564).

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  The claimant has not been under a disability, as defined in the Social Security Act, from April 15, 2016, through the date of this decision (20 CFR 404.1520(g)).

## ADMINISTRATIVE RECORD

*Administrative Hearing*

Plaintiff testified at her hearing before the ALJ on August 4, 2021.  Plaintiff testified that she has not worked since 2016.  She stated that she received workers' compensation and waited to seek social security benefits because she was hopeful that she would receive surgery and return to work.  Plaintiff asserted that the insurance company ultimately denied coverage for surgery and her condition deteriorated.  Plaintiff testified that she is unable to work due to concentration problems and an inability to sit for long periods of time.

Plaintiff explained that she first injured her back in 2004 and then she re-injured it in 2016.  Plaintiff estimated that she can only stand in one position for thirty minutes at a time or sit for up to thirty minutes due to back pain.  After that, she needs to adjust positions, including lying down,

regularly.  She stated that she has good days and bad days.  On bad days, which occur more than two days per month, she testified that she cannot do anything due to pain.  Plaintiff stated that she cannot bend over to pick up items, she cannot sit in a car for long periods of time and she cannot lift heavy items.  Plaintiff testified that she has nerve damage on her left side, causing foot drop. She stated that she was unable to have surgery to implant a spinal cord stimulator because the insurance company denied coverage. Plaintiff explained that she does not take pain medication because she only has one kidney and she does not want to cause damage to that kidney.  She stated that she tried injections, but they did not reduce her pain.  Plaintiff estimated that she sleeps only four or five hours per night.  She stated that she is being treated for nodules on her thyroid, hyperthyroidism and Grave's disease.

Plaintiff testified that she also has anxiety and depression, but she is not taking medication or attending counseling due to a lack of insurance coverage.  Plaintiff stated that she started having depression and anxiety after her accident in 2016, causing her to have difficulty concentrating and being around people.  She also experiences migraine headaches that make her nauseous and sensitive to light.  Plaintiff testified that she lives alone and cooks and performs household chores on her own.

A vocational expert witness, Patricia McLaughlin, also testified at Plaintiff's hearing.  Ms. McLaughlin identified Plaintiff's past work to include: (1) accounts payable clerk, DOT 216.482-010, sedentary, SVP 5; (2) medical billing/insurance clerk, DOT 214.362-022, sedentary, SVP 5; and (3) office manager, DOT 169.167-034, sedentary, SVP 7.  The ALJ presented Ms. McLaughlin a hypothetical individual of Plaintiff's age, education and work history, who is able to lift, carry, push or pull up to ten pounds occasionally and less than ten pounds frequently, occasionally operate foot controls with the left lower extremity, stand or walk for two hours out of an eight-

hour workday, sit for six hours out of an eight-hour workday, occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, crouch, and crawl, avoiding hazards such as unprotected heights and fast-moving mechanical parts, able to understand, remember, and carry out detailed, but not complex, instructions.  Ms. McLaughlin testified that the hypothetical individual could perform Plaintiff's past work as an accounts payable clerk and insurance clerk, but she could not perform her past work as an office manager due to the limitation on complex instructions.

The ALJ presented a second hypothetical individual with the same limitations as the first hypothetical, but the individual can never operate foot controls with the left lower extremity, must avoid exposure to uneven terrain, and must be allowed to alternate between sitting and standing every thirty minutes for a period of ten minutes, while remaining on task and at the workstation. Ms. McLaughlin testified that the individual would require an accommodation to perform Plaintiff's past work as an accounts payable clerk or insurance clerk because the individual would need a raised workstation to remain on task while standing for ten minutes at a time.

Going back to the first hypothetical, the ALJ altered the non-exertional limitations to include understanding, remembering, and carrying out simple instructions as opposed to detailed, but not complex instructions.  Ms. McLaughlin testified that this individual could not perform Plaintiff's past work.  She identified the following jobs that would be available for the individual: (1) table worker, DOT 739.687-182, sedentary, SVP 2, with approximately 125,000 jobs nationally; (2) patcher, [DOT title inaudible], sedentary, SVP 2, with approximately 67,000 jobs nationally; and (3) order clerk, food and beverage, DOT 209.567-014, sedentary, SVP 2, with approximately 200,000 jobs nationally.  With an additional restriction limiting lifting, carrying, pushing and pulling to no more than five pounds, Ms. McLaughlin testified that no sedentary jobs

would be available.  Similarly, she stated that no jobs would be available if the individual required additional recumbent rest breaks for thirty minutes, outside of normal work breaks, every two hours or if sitting was reduced to four hours, for a total of six hours of work per day.  Concerning absenteeism, Ms. McLaughlin testified that generally one absence per month is tolerated, but during the first ninety days of employment there should be no absences without an extremely good reason.

*Medical Record*

At a workers' compensation examination at HealthCare Express on April 18, 2016, Plaintiff reported injuring her back on April 14, 2016 while bending to get paper.  Plaintiff reported moderate low back pain.  On examination, she exhibited spasms and tenderness in the left and right paraspinal muscles and lumbar muscles with decreased range of motion secondary to pain. Gait, posture, and lower extremity sensation were normal. Imaging on April 18, 2016 showed postoperative and degenerative changes to the lumbar spine without acute bony injury and small nonspecific density right flank.  Rebekah McClenny, FNP-C, diagnosed muscle, fascia and tendon strain of the lower back and prescribed cyclobenzaprine.

At a follow up on May 3, 2016, Plaintiff rated her pain a three out of ten.  Gait and posture were normal, lower extremity sensation was intact bilaterally and upper and lower extremity deep tendon reflexes were 2+ and equal bilaterally.  The physician's assistant offered physical therapy, but Plaintiff requested an MRI because she did not believe physical therapy would be helpful.[1]  An MRI of the lumbar spine on May 13, 2016 showed no lumbar spinal canal or neural foraminal stenosis, with small disc protrusions at L3-L4 and L4-L5 and moderate to severe facet osteoarthritis at L4-L5.  On May 18, 2016, Plaintiff reported intermittent pain with numbness and

---

[1] Administrative Record, ECF 9-7, at *56 (Bates stamp p. 356).

tingling.  Her gait and posture remained normal.  A nurse practitioner reviewed Plaintiff's MRI results with her on June 2, 2016.  He opined that Plaintiff's symptoms were most likely related to muscle spasm from myofascial sprain and strain and recommended physical therapy.  He also prescribed an antidepressant.

Dr. Merrick examined Plaintiff at Azalea Orthopedics on July 6, 2016, February 22, 2017 and April 5, 2017.  Dr. Merrick noted lumbar range of motion limited by pain and stiffness with gait intact and normal bilateral lower extremity range of motion, motor function and sensation. Dr. Merrick reviewed X-ray and MRI findings showing spondylolisthesis at L4-L5 measuring 9 mm on flexion and 4 mm on extension, prior L5-S1 decompression and fusion, as well as L4-L5 decompression, slight spondylolisthesis measuring 2 mm at L4-L5 on the supine study, a substantial amount of fluid in the facets bilaterally at the L4-L5 level and mild bilateral foraminal stenosis at L4-L5.  Dr. Merrick recommended L4-L5 posterior decompression and fusion with TLIF.

Plaintiff returned to HealthCare Express for a follow-up visit the following year on August 11, 2017.  Plaintiff reported joint and muscle pain and an updated MRI was requested.  Dr. Van Andel completed a Texas Workers' Compensation Work Status Report stating that, for the period of August 11, 2017 to September 11, 2017, Plaintiff could return to work with restrictions including no kneeling/squatting, bending/stooping, pushing/pulling, twisting, climbing stairs/ladders or lifting/carrying pending a referral to Dr. Detwiler and an MRI.  An MRI of the lumbar spine on August 26, 2017, showed no lumbar spinal canal or neural foraminal stenosis, severe facet osteoarthritis at L4-L5, and status post discectomy and posterior fusion at L5-S1.  At another follow-up exam on September 11, 2017, Plaintiff reported pain radiating down her leg on range of motion, with decreased sensation from the left hip to the left ankle, and she exhibited

lumbar muscle tenderness and spasms.  Reflexes were normal.  The nurse practitioner prescribed baclofen and tramadol.  Dr. Van Andel completed another Texas Workers' Compensation Work Status Report for the period of September 11, 2017 to October 11, 2017 stating that Plaintiff could work with the same restrictions as previously imposed pending surgery with Dr. Detwiler.

Plaintiff had a follow-up examination on December 28, 2017.  Plaintiff reported pain at a 3 out of 10.  She stated that she only needed the muscle relaxers intermittently and that they help her sleep much better.  On examination, Plaintiff had no swelling or deformity in major joints and did not exhibit any sensation or motor deficits.

As a part of the workers' compensation process, Plaintiff had designated doctor examinations on September 1, 2016 and January 18, 2017.  Jennifer Pettibone, D.C., examined Plaintiff and reviewed her medical records.  Following her 2016 examination, Dr. Pettibone stated that Plaintiff had not yet reached maximum medical improvement, but that it could be expected in a few months after reasonable treatment for lumbar strain and associated facet effusions.  She opined that Plaintiff could work with light duty restrictions.  In 2017, Dr. Pettibone indicated that the MRI showed angular motion instability at L4-L5 requiring surgery.  She determined that Plaintiff's ability to work was restricted in any capacity until surgical stabilization and recovery could occur. Plaintiff was then sent for a post-designated doctor medical examination by Dr. Karl Erwin.  Dr. Erwin noted that Dr. Pettibone's opinions are based on incomplete findings and fail to specifically grade deep tendon reflexes, to explain the sensory modality used, or to include muscle strength testing, range of motion measurements, or paraspinal muscle studies.  Dr. Erwin concluded that the electrodiagnostic study relied upon by Dr. Pettibone, performed nearly one year after injury, does not meet the criteria for acute radiculopathy and the objective evidence does not support Dr. Pettibone's conclusion that there is angular motion instability.  Dr. Erwin's

examination revealed normal muscle tone, mild tenderness on palpation in the left paraspinal musculature area, 5/5 muscle strength in the hips, knees, ankles and great toes, the ability to walk on toes and heels and perform squats from a low-lying chair, intact pinprick and fine touch sensation with inconsistent testing of the left leg and dorsum of the foot and positive straight leg raises.

Plaintiff returned to Dr. Pettibone on January 25, 2018 for another designated doctor examination. At this examination, Dr. Pettibone noted motor strength 5/5 on the right and 4/5 on the left, deep tendon reflexes +3 on the left and +2 on the right, Braggard's test positive on the left for localized back pain, Patrick Fabere positive on the right for left sided low back pain, lumbar spine range of motion 70 degrees flexion plus 25 degrees SI joint flexion and 10 degrees extension, lateral flexion 20 degrees bilaterally and positive straight leg raise at 45 degrees on the left and 75 degrees on the right. Dr. Erwin submitted an addendum to his report on February 24, 2018 after obtaining MRI records. Dr. Erwin explained that the films reinforced his prior opinions and offered opinions concerning whether Plaintiff's condition resulted from an on-the-job injury.

Dr. Pettibone examined Plaintiff again on March 1, 2018. She determined that Plaintiff had a whole-person impairment of 20% and that Plaintiff had not yet reached maximum medical improvement. Plaintiff returned to Dr. Erwin for another post-designated doctor's examination on September 12, 2018. Dr. Erwin's examination revealed mild tenderness with palpation in the bilateral paraspinal musculature area, tenderness to touch in the left buttocks area, no trigger points or muscle spasm, no palpatory guarding, pain greater on lumbar flexion than extension, normal muscle tone, 5/5 muscle strength in the hips, knees, ankles and great toes, no problems walking on toes or heels or performing squats from a low-lying chair, and intact pinprick and fine touch in the bilateral lower limbs. Deep tendon reflexes were 2+ and symmetric. Overall, Dr. Erwin opined

that Plaintiff has degenerative anterolisthesis and spondylolisthesis of the lumbar spine, but that her subjective complaints are out of proportion to physical findings with exaggerated responses to a stimulus that is not reproduced when the same stimulus is introduced later.

Dr. Pettibone again performed a designated doctor examination on July 26, 2018.  Plaintiff complained of low back pain with left-sided radicular symptoms, left foot numbness, and pain on lumbar flexion and extension.  Deep tendon reflexes were bilaterally symmetric, motor strength in the lower extremities was 5/5 on the right and 4/5 on the left with normal sensation, straight leg raises were positive at 45 degrees on the left and 75 degrees on the right, Braggard's test was positive on the left for localized low back pain, Patrick Fabrere was positive on the right for left-sided low back pain, lumbar range of motion was 70 degrees on flexion plus 25 degrees SI joint flexion and 10 degrees extension, and lateral flexion was 20 degrees bilaterally.

A neurosurgeon, Dr. Paul Detwiler, examined Plaintiff on July 9, 2018.  On examination, Plaintiff's gait was intact and her upper and lower extremities moved with full strength.  Dr. Detwiler noted fairly dense numbness in the lateral aspect of her thigh and anterolateral thigh and fairly dense anterior, lateral and posterior shin and gastrocnemius numbness with numbness on the dorsum of the foot on the left.  Straight leg raises were negative bilaterally, Patrick's was negative bilaterally and reflexes were 2+ in the biceps, triceps, knee jerk and ankle jerk.  Plaintiff exhibited no pain with percussion along the lumbar spine and no pain with palpation over either SI joint.  Dr. Detwiler reviewed an MRI of the lumbar spine showing a prior fusion at L5-S1 with instrumentation.  Dr. Detwiler recommended a CT myelogram of the lumbar spine to determine whether she is actually fused and to evaluate the L4-L5 and L5-S1 foramen on the left.  The CT myelogram was performed on July 16, 2018 and showed fusion at L5-S1 and a slight grade 1 slip of L4-L5 of 1 to 2 mm.  Flexion and extension films showed no movement from extension to

flexion or fish mouthing at the L4-L5 level.  Dr. Detwiler noted a hint of some foraminal stenosis at L4-L5 and L5-S1 on the left.  Dr. Detwiler opined that Plaintiff was "behaving like she has a classic S1 radiculopathy," but "the degree of stenosis at the L5 S1 level and L4-5 is only mild to moderate," and he could "not see any pathological motion at L4-5," which would be "unlikely to give an S1 distribution pain and numbness" even if present.[2]

At a follow-up on June 20, 2019, Dr. Detwiler stated that he re-reviewed the CT myelogram results and he noted a bone spur sticking into the superior L5 level.  He also stated that an EMG on December 17, 2018 showed chronic L4 and L5 radiculopathy.  Dr. Detwiler identified the treatment options to include doing nothing, a referral for pain management, a spinal stimulator trial, and left L5 lateral gutter decompression.  Dr. Detwiler noted that Plaintiff elected to proceed with a left L5 laminectomy for lateral gutter and bone spur decompression.

Plaintiff returned to Dr. Pettibone for a designated doctor examination on December 3, 2019.  Plaintiff reported constant pain in her left leg, pinpoint stabbing pain in her left hip, depression and moodiness associated with chronic pain and difficulty sleeping.  Plaintiff shifted positions every 10 minutes during the examination.  Lumbar range of motion was moderately restricted due to pain and motor strength was 5/5 on the right and 4/5 on the left.

Tina Lloyd Borke, Psy.D., performed a consultative mental status examination on June 15, 2020.  Plaintiff was cooperative and exhibited good hygiene and clear speech.  She cried throughout the interview and reported memory problems.  Plaintiff asserted suicidal ideation at times with no plan and sleeping problems.  Her mood was depressed and anxious.  Plaintiff showed good judgment and sensorium, but she could not answer simple common knowledge questions. Remote and recent memory were good, immediate memory was fair and delayed memory was

---

[2] Administrative Record, ECF 9-9, at *110 (Bates stamp p. 693).

poor.  Plaintiff exhibited difficulty focusing and fair insight.  Dr. Borke diagnosed generalized anxiety disorder, major depressive disorder, recurrent, moderate, and borderline intellectual functioning.

Dr. Paul Patrick performed a consultative examination on October 22, 2020.  Plaintiff exhibited a slight left foot drop.  She was able to perform limited squatting and hopping, needed support for tandem walking and could perform toe walking, but not heel walking.  Cranial nerves were grossly intact and deep tendon reflexes were +1 bilaterally and symmetric.  Dr. Patrick noted pain on lumbar flexion and extension, as well as straight leg raises, and lower extremity muscle weakness on the left.  Dr. Patrick reviewed Plaintiff's records and diagnosed left lumbar radiculopathy and severe facet osteoarthritis L4-L5.  He opined that Plaintiff would be limited to sitting and standing for short periods of time, 30 minutes or less, and walking a moderate distance of a half block.  He stated that she is able to lift 5 pounds one time, use a cell phone and climb 16 steps.

Plaintiff went to Hospitality ER on January 15, 2021 following a car accident.  Plaintiff reported neck, back and head pain.  A CT of the head and cervical spine did not show abnormalities, except for thyroid nodules.  A CT of the thoracic spine was unremarkable.  Plaintiff's lumbar scan showed chronic post-surgical changes at L5-S1, chronic grade 1 anterolisthesis of L5 on S1 and mild degenerative changes at L3-L4 and L4-L5.  Plaintiff returned two days later with neck and shoulder pain.  She was diagnosed with cervical paraspinal muscular strain and headache.

On November 15, 2019, a State agency medical consultant, Dr. Patty Rowley, reviewed the medical records and considered Plaintiff's physical residual functional capacity.  Dr. Rowley opined that Plaintiff retains the physical residual functional capacity to occasionally lift and carry

20 pounds, frequently lift and carry 10 pounds, stand and/or walk for 4 hours with normal breaks, sit with normal breaks for a total of 6 hours in an 8-hour workday, and push and pull limited only by lift and carry restrictions, with occasional climbing of ramps and stairs, stooping, crouching, and crawling and no climbing of ladders, ropes or scaffolds.  On reconsideration on December 11, 2020, Dr. George Carrion reduced the physical residual functional capacity assessment to the ability to occasionally lift and carry 10 pounds, frequently lift and carry less than 10 pounds, stand and/or walk 2 hours, sit 6 hours, and pushing and pulling in the left lower extremity limited to occasional, with occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling and no climbing of ladders, ropes or scaffolds.  Mark Schade, Ph.D., reviewed the record and opined that Plaintiff has the mental residual functional capacity to understand, remember, and carry out detailed but not complex instructions, make decisions, concentrate for extended periods, interact appropriately with others, and respond to changes in the work setting.

## DISCUSSION AND ANALYSIS

In her brief, Plaintiff presents two issues for review: (1) whether the ALJ failed to evaluate the opinion evidence from Jennifer Pettibone, D.C., or Rodney K. Van Andel, M.D.; and (2) whether the ALJ failed to properly evaluate opinion evidence from Paul Patrick, D.O.  Plaintiff submits that the ALJ failed to evaluate Dr. Pettibone's opinion that she cannot stand more than ten minutes due to angular motion instability at L4-L5, that she is restricted from any lifting, pulling, pushing or carrying, and that she has to lie down for thirty minutes to an hour per every two to three hours of standing, sitting or walking.  She also asserts that the ALJ did not consider Dr. Van Andel's opinions that she could not perform any lifting or carrying pending surgery with Dr. Detwiler due to angular motion instability.  Plaintiff argues that these opinions are consistent with other opinions and medical evidence in the record.  Further, Plaintiff asserts that the ALJ

improperly found Dr. Patrick's opinion to be generally unpersuasive and unsupported by objective findings, without identifying any specific evidence that contradicts Dr. Patrick's opinion. Plaintiff contends that Dr. Patrick's opinion is consistent with the evidence in Dr. Pettibone's, Dr. Van Andel's, and Dr. Detwiler's records, as well as imaging studies.

In response, the Commissioner argues that the ALJ properly considered the medical and non-medical evidence and evaluated the medical opinions and prior administrative medical findings to determine that she retained the capacity to perform a limited range of sedentary work. The Commissioner acknowledges that the ALJ did not reference two single-page status reports signed by Dr. Van Andel in 2017 concerning the time periods of August 11, 2017 through September 11, 2017, and September 11, 2017 through October 11, 2017, stating that Plaintiff cannot lift or carry, kneel, squat, bend, stoop, push, pull, twist or climb. The Commissioner asserts, however, that the forms are limited to two months of time and do not qualify as medical opinions as defined in 20 C.F.R. § 404.1513(a)(2). At most, the Commissioner submits that the forms suggest a temporary disability and are not valuable or persuasive. Further, the Commissioner argues that they concern a time period prior to the applicable time period pursuant to 20 C.F.R. § 404.315(a)(4). With regard to Dr. Pettibone's opinions, the Commissioner asserts that the ALJ properly considered her findings and notes that Dr. Pettibone's assessed limitations are for limited time periods that are less than twelve months. Finally, the Commissioner submits that the ALJ properly concluded that Dr. Patrick's findings were unpersuasive and unsupported, even by his own objective findings, and they are not consistent with other medical evidence in the record.

In her reply, Plaintiff does not respond to the Commissioner's arguments concerning the ALJ's evaluation of Dr. Van Andel's opinions. Concerning Dr. Pettibone, Plaintiff argues that the ALJ is required to explain the persuasiveness of all medical opinions, regardless of whether the

assessed limitations would last for twelve months.   Plaintiff additionally asserts that the Commissioner is seeking to apply improper post hoc rationalizations for the ALJ's findings.

In her discussion at step two of the disability analysis, the ALJ recited the medical evidence of record.  At this step, the ALJ concluded that Plaintiff's severe impairments include lumbar spine degenerative disc disease and anxiety.  Plaintiff does not dispute the ALJ's findings concerning her severe impairments or the ALJ's finding at step three that she does not meet or equal a listed impairment.  Plaintiff's assertions of error by the ALJ concern the ALJ's evaluation of opinion evidence in her residual functional capacity finding at step four.

It is the ALJ's responsibility to determine a claimant's residual functional capacity.  *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).   That finding, however, must be supported by substantial evidence.  *Id*.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Newton v. Apfel*, 209 F.3d at 452.  On review, the Court will scrutinize the record to determine whether substantial evidence is present to support the ALJ's finding, but the Court cannot reweigh the evidence or substitute its judgment. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  "If the Commissioner's fact findings are supported by substantial evidence, they are conclusive." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971)).

There is no requirement that an ALJ's RFC finding must mirror or match a medical opinion. *Myers v. Saul*, 2021 WL 4025993, at *8 (W.D.Tex. Sept. 3, 2021).  "The determination of residual functional capacity is the sole responsibility of the ALJ" and she may properly interpret medical evidence to determine the claimant's capacity for work. *Taylor v. Astrue*, 706 F.3d 600, 602–603 (5th Cir. 2012).  The ALJ's RFC assessment is not a medical opinion.  *Joseph-Jack v. Barnhart*, 80 Fed.Appx. 317, 318 (5th Cir. 2003).  Unlike medical providers and medical consultants, the ALJ

considers additional evidence including the claimant's statements and testimony concerning her symptoms, her activities of daily living, the frequency and intensity of pain, the effects of medication, as well as all other medical evidence and opinion statements in the record.  20 C.F.R. § 404.1529.

The revised rules for the consideration and articulation of medical opinions apply to claims filed after March 27, 2017.  20 C.F.R. § 404.1520c.  Plaintiff filed her application on September 9, 2019.  Pursuant to 20 C.F.R. § 404.1520c(a), the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  The ALJ evaluates the persuasiveness of the medical opinions and articulates the consideration of medical opinions, but the ALJ is not required to explain the consideration of each factor that is considered.  20 C.F.R. § 404.1520c(b).  The "supportability" and "consistency" factors are most important.  *Id*.

At step four, the ALJ considered Plaintiff's symptoms together with the objective medical evidence and other evidence to assess her RFC.  The ALJ determined that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely consistent with the medical evidence, the history of medical treatment or Plaintiff's activities of daily living.  The ALJ referred to and cited specific diagnostic findings in 2016 showing laminectomies and posterior fusion at L5-S1, 9 mm anterolisthesis at L4 on S1, mild degenerative change elsewhere, an MRI in 2016 showing no lumbar spinal canal or neural foraminal stenosis, small disc protrusions at L3-4 and L4-5, and moderate to severe osteoarthritis, and a CT myelogram in 2018 demonstrating severe facet arthrosis at L4-5 resulting in mild degenerative spondylolisthesis with no canal or foraminal stenosis, a successful L5-S1 fusion with

decompressive laminectomies and solid fusion with no canal or foraminal stenosis noted.  The ALJ noted that Dr. Detwiler commented that an EMG was not helpful.  The ALJ summarized a consultative examiner's notes in 2020 concerning Plaintiff's ability to drive herself to the examination and her stated ability to cook, clean, dress, ambulate, bathe and shower without assistance, as well as X-ray findings showing only mild degenerative disc disease on the lumbar spine and a .5cm circumference difference between the right and left calf and thigh.

The ALJ also referred to Plaintiff's treatment in 2021 following a car accident and the CT findings at Hospitality Health showing multiple thyroid nodules, no significant disc protrusions, no several spinal canal stenosis and no significant neural foraminal narrowing in the thoracic spine, and a 9mm grade 1 anterolisthesis of L5 on S1 in the lumbar spine, with only mild degenerative disc disease.  The ALJ noted that Plaintiff reported taking no medication for back pain and not being prescribed an assistive device to walk.

The ALJ similarly summarized Plaintiff's mental health care and symptoms.  Notably, Plaintiff has not required inpatient psychiatric hospitalization or sought emergency or immediate outpatient treatment.  The ALJ considered the 2020 consultative examination and Dr. Borke's observations of alertness, good eye contact, difficult thought process, good judgment, good sensorium, good remote and recent memory, fair immediate memory and reported difficulty focusing.

Turning to medical opinions and prior administrative findings, the ALJ explained that State agency medical consultant Dr. Rowley's opinion is less persuasive than Dr. Carrion's more restrictive finding at the reconsideration level—to Plaintiff's benefit—because Dr. Carrion was able to review additional evidence, including a consultative examination.  The ALJ opined that Dr. Carrion's opinion, restricting Plaintiff to lifting and carrying 10 pounds occasionally and less then

10 pounds frequently, standing and walking for a total of 2 hours, and sitting for 6 hours in an 8-hour workday with only occasional pushing and pulling in the left lower extremity, climbing ramps/stairs, balancing, stooping, kneeling, crouching, and kneeling, but never climbing ladders, ropes or scaffolds, while avoiding even moderate exposure to hazards and unprotected heights, is persuasive because it is well supported and consistent with the medical and other evidence discussed within the written decision.  In particular, the ALJ noted that it is supported by and consistent with the evidence of weakness in the left lower extremity, slight decrease in left thigh and calf circumference, and ability to ambulate independently.  The ALJ pointed out that Dr. Carrion had the opportunity to review the entire record and he is familiar with the Rules and Regulations of the Social Security Administration.

The ALJ considered the opinion of State agency psychological consultant Mark Schade, Ph.D., and concluded that his opinion is persuasive because it is consistent with Plaintiff's limited treatment for mental health and limited reports of mental health symptoms.  The ALJ also considered the opinion of the psychiatric consultative examiner, Dr. Borke.  The ALJ opined that Dr. Borke's opinion that Plaintiff has difficulty walking, crouching, climbing, standing, walking, crawling, and lifting, as well as that she has difficulty with memory problems, cannot respond appropriately to work changes or environmental changes, cannot tolerate normal levels of stress and has borderline intellectual functioning is generally unpersuasive because "no formal testing had been done."[3]  Additionally, the ALJ noted:

> First, it is inconsistent with the examiner's own findings of good remote and recent memory, fair immediate memory, and fair insight.  The examiner noted difficulty with focusing during the examination, which is supportive of some degree of mental limitation.  However, the lack of mental health treatment or significant mental health symptoms outside of this examination is inconsistent with the examiner's opinion that the claimant would be wholly unable to respond to work or

---

[3]Administrative Record, ECF 9-2, at *36 (Bates stamp p. 35).

environmental changes, or tolerate normal levels of stress.  Finally, the examiner's opinion as to physical limitations are outside the examiner's area of expertise.

*Id*.

The ALJ considered the opinion of the consultative examiner, Dr. Patrick, that Plaintiff would be limited to sitting for 30 minutes or less, standing for 30 minutes or less, walking half of a block, lifting 5 pounds one time, using a cellphone, and climbing 16 steps.  The ALJ concluded that Dr. Patrick's opinion is "generally unpersuasive and unsupported by objective findings, such as a slight foot drop and ability to ambulate independently." *Id.* at *37 (Bates stamp p. 36).

The ALJ additionally recognized and considered "the workers' compensation opinions from a chiropractor stating that the claimant was unable to work," and explained that this issue is reserved to the Commissioner. *Id.*  Finally, the ALJ opined that Dr. Merrick's 2016 statement that Plaintiff could lift 10 pounds is "generally persuasive as it is consistent with other evidence of record." *Id.*

Plaintiff complains that the ALJ concluded that Dr. Patrick's opinion was unpersuasive, but she did not identify specific evidence contradicting Dr. Patrick's opinion.  The regulations require the ALJ to evaluate the persuasiveness of the medical opinions and articulate the consideration of medical opinions.  20 C.F.R. § 404.1520c(b).  Here, the ALJ evaluated Dr. Patrick's opinion and determined that it was unpersuasive because it was not supported by his own objective findings.  Specifically, Dr. Patrick's examination revealed a slight left foot drop.  The ALJ considered that, in combination with the evidence that Plaintiff ambulated independently, and determined that Dr. Patrick's opinion that Plaintiff is limited to sitting and standing for 30 minutes or less, walking a half block, lifting 5 pounds one time, using a cell phone and climbing 16 steps is unpersuasive.  There are no objective findings in Dr. Patrick's examination that Dr. Patrick

related to those findings.  Plaintiff has not shown that the ALJ erroneously evaluated Dr. Patrick's opinion.

Similarly, Plaintiff asserts that the ALJ improperly evaluated Dr. Pettibone's opinions.  Dr. Pettibone completed designated doctor examinations as a part of the workers' compensation evaluation process and made determinations concerning whether Plaintiff had reached maximum medical improvement and could return to work from a workers' compensation perspective. The ALJ's consideration of Dr. Pettibone as a medical opinion was limited to her opinion that Plaintiff is unable to work.  Decisions on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner.  *Newton v. Apfel*, 209 F.3d at 455–56.

Plaintiff refers to statements concerning very short terms by both Dr. Pettibone and Dr. Van Andel during the workers' compensation process.  Specifically, Plaintiff points to a statement by Dr. Pettibone concerning Plaintiff's work abilities between August 17, 2019 and November 15, 2019[4] and the work status reports signed by Dr. Van Andel concerning Plaintiff's work abilities between September 11, 2017, and October 11, 2017 and October 11, 2017 and November 11, 2017.[5]  The disability analysis concerns impairments "which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1)(A) and 423(d)(1)(A).  These referenced statements are for short, temporary time periods. Importantly, Dr. Van Andel's statements specifically reference that his statements only concern Plaintiff's condition pending a referral to a specialist and pending surgery to improve Plaintiff's condition.  Plaintiff has not shown that these statements concerning temporary one-to-three-month time periods are medical opinions requiring evaluation.

---

[4] Administrative Record, ECF 9-9, at *152 (Bates stamp p. 735).
[5] Administrative Record, ECF 9-7, at *22, 33 (Bates stamp p. 322, 333).

For all of these reasons, Plaintiff has not shown that the ALJ failed to properly consider the opinion evidence in compliance with the revised regulations and the RFC finding is supported by substantial evidence.  The Commissioner's decision should be affirmed and the complaint should be dismissed.  It is therefore

**ORDERED** that the Commissioner's final decision is **AFFIRMED** and this social security action is **DISMISSED WITH PREJUDICE**.

So ORDERED and SIGNED this 23rd day of August, 2023.

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE